This case comes before the court as a personal injury claim for money damages. The trial court granted summary judgment on the basis that the defendant did not owe a duty to turn on the house lights while the credits were rolling. The facts of this case are relatively straightforward. Helen Reyes on December 6, 2014 went to Landmark Cinemas to see a movie. At the completion of the movie and while the credits were rolling, she was attempting to leave and fell because she did not see a step in the dark. Helen testified that she waited after the movie completed while the credits were rolling, that everyone else who had attended the movie had already left and was waiting for the lights to come on. A worker came in with a flashlight to begin cleaning. When she attempted to make her exit, she fell. She testified that there was floor lighting in the center aisle, but does not believe there was any in front of her where the fall occurred and that there was no side or house lights at the time. We know that a business has a duty to exercise reasonable care to maintain its premises in a reasonably safe condition for use by its invitees. When we look to that duty, there are four factors. The foreseeability of injury, likelihood of injury, magnitude of burden of guarding against it, and the consequences to the defendant. When we are dealing with foreseeability to a business, there are three factors from the restatement as to whether the business knew or should have known of the condition. Helen testified that this worker came in at the completion of the movie. He would have seen this unlit condition. Whether the individual would have discovered or protected themselves against it, again, it's Helen's testimony that there wasn't adequate lighting and she could not see the step and therefore could not discover it. Did the worker with the flashlight have the flashlight on? Yes, that's her testimony that he had the flashlight on and was sweeping up popcorn or cleaning up the theater in between shows. And he came in with it? Yes. The last film that the defendant failed to exercise reasonable care to protect against that danger, that thing that they did not turn off the side wall or house lighting at the conclusion of the film, when they knew these patrons would be leaving. Likelihood of injury, I think it's very likely that an individual may fall down an unlit staircase. The magnitude or burden of guarding against it, very slight in that the movie theater already has these lights in place. All that would be asked is to turn them on when the movie has completed and these individuals are attempting to leave. And then the consequences to the defendant, again, very slight, just to turn on the light. For these reasons, I would ask that the trial court screening and summary judgment be reversed. Thank you, Mr. Captain. Mr. Unrath. Good morning, Your Honor's counsel. May it please the court, my name is Craig Unrath and I represent the Landmark Cinemas. A plaintiff was a regular patron at this movie theater. She was there once or twice a month. She testified that she had probably been there about 20 times. She always sat in the first row, the first row behind the center cross aisle. And the reason for that was because she didn't want to climb stairs. So she came into the theater, took one step up and sat down in her seat. And it's important to understand that she must have known, not only when she got into her seat, obviously because she had to step up, but throughout the course of this film that she was in an elevated position. The reason for that is that the row in front of her is on the ground floor. And she was elevated by that. So throughout this entire film, she would look out and see that the row of seats in front of her was lower. She must have known she was raised up. And that's apparent if you look at the photo, the first photo in our brief. I specifically put that in there to show where the location of that aisle in front of her. And it is lower than she is. Now, when the movie was over, she stood up to leave during the credits. Now, the lights, it's important to note that the lights in the theater at that moment were the same lighting as when she entered. It seems to me she must have entered the theater late while the movie was running because the lights had not changed at all. And I think that that's a key point here. They were exactly the same as they were when she entered the theater. Now, as she stood up to go, she forgot not to step down. But she must have known it was there because she took a step up. She'd been in this theater numerous times before. And I think all of us know that this is a fairly standard layout for a movie theater. Are all the theaters at Landmark the same? I can't tell you that, Donna. I don't think they are. But I think that there's a good concept. I've seen this layout from every theater I've ever been in over the last ten years or so. Now, she forgot that the step was there, took a step down and fell. What happened here is that she made a mistake. It's something we all do. She forgot where she was. She didn't look to the left. If she had, she would have seen track lighting, the mark in the aisle. She didn't look down. She didn't look ahead of her and see that the row of seats in front of her was lower than she was, thereby indicating that there is a step down. She forgot to do this. And it's something that happens to people. But it does not form the basis of a complaint for negligence. Now, we have... The primary focus of our brief is on duty. We argue about whether open and obvious. We argue approximate causation. But I think duty analysis is really the primary focus here. The first element is likelihood of injury. What are the odds that a person sitting in an elevated position will... One that is plainly obvious to them because they can see the row in front of them lower than they are. What are the odds that they're not going to realize that there's a step down? We have to take into account personal experience. She's been in this theater sitting in the same row numerous times. Another element is foreseeability. And I think it's important to point out that it's not just foreseeability. It's reasonable foreseeability. Is it reasonably foreseeable that a moviegoer will fail to notice that she is in an elevated position throughout an entire movie? Is it reasonably foreseeable that they will ignore the track lighting on the floor and forget about the step that they used to step up? And finally, we have the magnitude of the injury. The magnitude of the scarring against the injury and the consequences of imposing this burden on the defendant. And this is something that I ran through in my brief. If we are to provide lighting every time someone attempts to get up during a theater or, in this case, comes into a theater while the movie is running, they'll have to raise the lights and then they'll dim the lights. And when someone goes up to the concession stand or the washroom, they raise the lights and then they dim the lights. It's not a workable situation. Is it unworkable to just turn the lights on at the end of the movie? The lighting? I don't know that that would solve the problem, Your Honor. Because if we turn on the lighting at the end of the movie, we still have people getting up and leaving the theater and coming into the theater while the lights are down. So if we say that there was negligence in failing to raise the credits, why wouldn't there be negligence to raise them or bar access to the theater during the film itself? Or just say that they assume the risk of falling if they leave during the movie when it's dark. Well, and I think that there's another thing here, is that the theater has really taken some adequate measures already by providing track lighting. It is, the lights are lowered, but it isn't dark in the theater. Counsel pointed out that there was a flashlight being used. There's no evidence that he was using that flashlight to make sure he didn't fall out of the sky. Chances are he was using that flashlight to look through garbage. What he was there to do was clean the theater. But he was using it because it wasn't light enough for him to do what he needed to do. And what he needed to do was clean the theater. And that's to do an adequate job. He's probably going to need more lighting. Mr. Unruh, I'm a little confused about the facts. I want to congratulate you on the statement of facts you gave us. I've got a one-paragraph statement of facts in Amtel on spree. I can't make heads or tails out of it. So normally I would go to the complaint. The complaint isn't even attached to the appendix. So I can't see what the alleged facts are. In your statement of facts, you indicate that the petition of the injured party stood up while the credits were rolling. Are those facts? That's as I understand it, yes. So the movie wasn't over. The credits were still rolling. It's not like they had started commercials or the house lights had not come up because the credits were still rolling. And I'm guessing that's part of the movie. It is. As far as I'm concerned, it is. So when does the theater have an obligation to raise the house lights? Is it a minute before the end of the film when people start walking out? If it's a bad film and people are leaving, does the theater have an obligation or a duty to raise lights when people start moving out? I'm a little frustrated with Amtel on because this statement of facts is, in my opinion, wholly inadequate. But you're representing to this court that you're understanding the facts is that the credits were still rolling as part of the movie. Yes. And this would have provided additional light to the theater. And in terms of deciding exactly when the house lights must come on and off. But is it undisputed that the credits were rolling? Is that an undisputed fact? I believe that is the deposition testimony from the plaintiff. Okay. And it's not contradicted. All right. Well, I congratulate you for at least shedding some light on this, no pun intended, by giving us a much more adequate statement of facts. Thank you, Your Honor. And I would just point out that you mentioned when do they have a duty to turn on those lights? And I have to tell you that that's a very difficult question. Because at what point are you disturbing the moviegoers' experience there? I said that the landmark settlers had adequate lighting to protect anyone who takes reasonable care for their own safety during the film. That anyone exercising reasonable care for their own safety will use that track light, will use the perspective they can see from the, I believe they call it stadium seating, to know that there are steps ahead of them and that they have to be careful. Is it possible that the physical, the nature of this person's physical presence? You know, I was pregnant at one point in time and I couldn't see my feet. Is it possible that there's a condition that this woman should have been a little more careful due to? I actually mentioned it in my statement of facts, or actually in the argument, that she was obese and this was not meant to criticize her or anything because she also has arthritis. And so I think the answer is yes, she does have to take some additional precautions for her own safety. And I think she did. I think she did. And that's why she sat in the first row of that seminar. So she wouldn't have to walk up a flight of 10 steps. And we all know that better seats are higher up. That's just my opinion. But she took care to protect herself by getting in one of these lower seats. And what happened here is that she just made a mistake. And it's a mistake that people make. We all trip. We all fall at some point in our lives. And if you go back and examine it, it's because you weren't careful. Because you weren't thinking. And that's what happened here. She had to have known she was in an elevated position. And she had to know that not only because she could see it, but because when she entered the theater under the same lighting conditions, she had to step up. Now she has to step down. Is it an accurate statement in the facts that all of the other people who had been watching the movie had left? That is her testimony. I don't know that all of the people had left. And I would have to check her deposition testimony. So I can't give you an accurate answer. But I know that the credits were rolling. I know that people had left. Whether all of them had left or not, I don't know. So this is motion for summary judgment. Some of the questions that you've been asked would suggest that maybe there's an issue of fact. I don't see one, Your Honor. Because in the end, I must come forward in opposing the motion for summary judgment with sufficient facts and evidence that would entitle them to a recovery. And I don't believe that they've done that here. There is no issue of fact. Actually, let me back up for just a moment. I don't know that we even address the issue of fact, unless we can find as a matter of law that there was a duty of it. And the lack of foreseeability, the small likelihood of injury, suggests that as a matter of law, there can be no crime here. But you said that it's not foreseeability. It's reasonable foreseeability. And typically reasonableness is an issue for the fact finder. Well, the duty, but the duty is an issue of law. And that should be decided by the court. And so in this case, I would submit that there is no issue of fact for the jury for a trial in fact. Now, proximate causation has both a legal and factual background to the problem. And proximate cause maybe is oftentimes an issue for the jury. It can be decided as a matter of law. But before we even get to proximate cause, we have, to my mind, a lack of duty here. Is there no further questions? No. I ask that you affirm the trial report. Thank you very much. Thank you, Mr. Enright. Mr. Compton. Even before you get started, Mr. Compton, I'm really disappointed in the quality of the brief that this court got from you. And I'm hoping my thoughts will maybe cause you to do a little better job next time. As I read your brief, I understand that you're not claiming there is disputed facts that would negate the court's ruling on summary judgment. You are challenging the court's ruling as a matter of law, that there is no duty to raise the house lights until after the credits are done rolling. Am I correctly perceiving the issue on appeal as a question of law, of whether the trial court found no duty to raise house lights while the credits are rolling? Correct, Your Honor. All right. To address a point that was brought up as far as when the sliding should be provided at the conclusion of the film, I guess you could say the credits are a part of the film. However, anyone who has gone to a movie knows that at the completion of, I guess, the movie segment versus the credit segment, that is when patrons leave. The theater would know that. And as well as coupled with her testimony that she waited for the lights to come up and everyone had already left and a worker had come in. The argument that she made a mistake, again, her testimony is that she couldn't see the step or didn't see the step, not that she forgot it was there or had any other issue that it was because there wasn't any side or house lighting. She couldn't see the step. That's what caused her to fall. I don't see the relevance of the worker coming in with a flashlight. The fact that the worker may have started cleaning up before the movie was over, why is that even relevant to our consideration of this question of law? I think it goes to two factors. First one, the lighting conditions in the theater, the fact that he would need a flashlight to do his job, as well as that the movie had concluded. He wouldn't come in to clean the theater with a flashlight while the movie was ongoing. I'm just going to tell you what my experience is. You've got kids working in theaters that have dates. They want to get out of there fast. You've got people watching movies that want to get out to go to dinner. When the credits start rolling, everybody wants to leave, but I'm guessing there's a contractual obligation for the theater to play that movie until the end. If the theater raised those house lights so nobody could read the credits, I'm guessing there would be a breach of some sort of an agreement with the company that provides a movie. The fact that people do get up or that employees do come in when the lights are down, I fail to see how that creates a duty to raise the lights because people choose to move before the credits are over. Is there a case standpoint? As to providing adequate lighting? While the credits are rolling. Not to as well the credits are rolling, Your Honor. One of the elements of duty is foreseeability, reasonable foreseeability. So we would be looking at factors that might suggest what's reasonably foreseeable. As was mentioned, I think it is reasonably foreseeable that an individual in an unlit area would fall down the step. When it's with regards to a business, we look again at restatement, whether they know or should have known the condition. They'd tell us testimony that this employee was in there, so we would have witnessed the unlit condition. Whether the plaintiff would discover it. Again, her testimony is that it was dark and she couldn't see it. And whether they failed to exercise reasonable care to protect against it in turning on their already existing side or house lights. No one has anything further. Thank you, Mr. Captain. And I thank you both for your argument today. This is a matter of resignment. The judge has a written disposition.